UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
LEONARD SEMERARO,

                    Plaintiff,           Docket No. 1:17-cv-8535-ER

      -against-

THE WOODNER COMPANY and JEFF
BURDICK,

                    Defendants.
--------------------------------------------------------X


**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS
PLAINTIFF'S "AMENDED VERIFIED COMPLAINT"**


**Perry S. Heidecker, Esq.**
**Milman Labuda Law Group PLLC**
**Attorneys for Defendants Woodner Company and Jeffrey Burdick**
**3000 Marcus Avenue, Suite 3W8**
**Lake Success, NY  11042**
**Tel. (516) 328-8899**

## <u>TABLE OF CONTENTS</u>

**BACKGROUND** ........................................................................................................ 1

**THE LITIGATION** ................................................................................................... 2

**DISCUSSION** ........................................................................................................... 3

    **The Legal Standard** ............................................................................................ 3

    **The Whistleblower Claim** .................................................................................. 4

    **The Age Discrimination Claim Under the New York State Human Rights Law** ............... 7

    **The Age Discrimination Claim Under the Age Discrimination in Employment Act** .......... 9

    **The Breach of the Contract Claim** ................................................................. 11

    **Waiver of Claims Under NYLL 740(7)** ......................................................... 12

    **CONCLUSION** .................................................................................................. 13

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................... 3

*Barker v. Peconic Landing at Southold,* 885 F.Supp.2d 564 (E.D.N.Y. 2012). ............................ 6

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007) .............................................................. 4

*Bordell v. General Electric Co.,* 88 N.Y.2d 869 (1966) ...................................................... 6

*Catapano-Fox v. City of New York,* 2015 U.S. Dist. LEXIS 75875
  (S.D.N.Y. June 11, 2015) ................................................................................. 3,8

*Chowdhury v. Sadovnik,* 2017 U.S. Dist. LEXIS 149691 (E.D.N.Y. September 14, 2017) .......... 9

*Collette v. St. Luke's Roosevelt Hospital,* 132 F.Supp.2d 256 (S.D.N.Y. 2001). ..................... 6, 12

*Dawson v. New York City Transit Authority,* 624 F. App'x 763 (2d Cir. 2015) .......................... 8

*DeFrancesco v. Bottalico,* 2011 U.S. Dist. LEXIS 144979 (S.D.N.Y.  Dec. 16, 2011) .............. 11

*DelCostello v. International Brotherhood of Teamsters,* 462 U.S.151 (1983) ............................. 11

*Doyle v. United Airlines, Inc.,* 914 F.Supp.2d 325 (E.D.N.Y. 2012) .......................................... 11

*Duarte v. St. Barnabas Hospital,* 2017 U.S. Dist. LEXIS 148441
  (S.D.N.Y. September 13, 2017) ............................................................................. 5

*Faber v. Metro. Life Ins. Co.,* 648 F.3d 98 (2d Cir. 2011) ..................................................... 3

*Food & Commercial Workers v. Mulder,* 31 F.3d 365 (6th Cir. 1994). ................................... 12

*Green v. Saratoga A.R.C.,* 233 A.D.2d 821 (3d Dep't 1996) ................................................. 6

*Guerra v. Jones,* 421 F.App'x 15 (2d Cir. 2011) ................................................................. 10

*Hettler v. Entergy Enterprises,* 15 F. Supp.3d 447 (S.D.N.Y. 2014) ....................................... 4

*Kern v. DePaul Mental Health Services,* 152 A.D.2d 957 (4th Dep't 1989). ............................ 6

*Khaleel v. F.J.C. Sec. Servs, Inc.,* 2016 U.S. Dist. LEXIS 114841
  (E.D.N.Y. August 26, 2016). ............................................................................. 10

*Leibowitz v. Bank Leumi Trust Co.,* 152 A.D.2d 169 (2d Dep't 1989) ....................................... 6

*Leonard Semeraro v. Woodner Company and Jeff Burdick,* Index No. 656422/2017
  (Burdick Aff. ¶ 22). ......................................................................................... 2

*Littlejohn v. City of New York,* 795 F.3d 297 (2d Cir. 2015) .................................................. 7

*McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). .................................................... 7

*McGill v. University of Rochester,* 600 F.App'x 789 (2d Cir. 2015). ........................................ 7

*Miller Brewing Co. v. State Division of Human Rights,* 66 N.Y.2d 937 (1985). ......................... 9

*Nadkarni v. North Shore Long Island Jewish Health System,* 2003 U.S. Dist. LEXIS
  265529E.D.N.Y. July 31, 2003) ............................................................................. 4

*Offor v. Mercy Medical Center,* 167 F.Supp.3d 414 (E.D.N.Y. 2016) ....................................... 9

*Oscar Mayer & Co. v. Evans,* 41 U.S. 750 (1979) .............................................................. 10

*Peace v. KRNH, Inc.,* 12 A.D.3d 914 (3d Dep't 2004) .......................................................... 6

*Vaca v. Sipes,* 386 U.S. 171 (1967) .............................................................................. 11

*Varughese v. Mount Sinai Med. Ctr.,* 2015 U.S. Dist. LEXIS 43758
  (S.D.N.Y. March 27, 2015) ................................................................................. 5

*Vaughn v. Mobil Oil Corp.,* 708 F.Supp. 595 (S.D.N.Y. 1989) ............................................... 9

*Weslowski v. Zugibe,* 14 F.Supp.3d 295 (S.D.N.Y. 2014). .................................................... 9

*White v. Rose Food,* 128 F.3d 110 (2d Cir. 1997). .............................................................. 12

*Williams v. New York City Housing Authority,* 458 F.3d 67 (2d Cir. 2006)................................. 8
*Wooding v. Winthrop University Hospital*, 2017 U.S. Dist. LEXIS 90559
  (E.D.N.Y. June 12, 2017)......................................................................... 8

**Statutes**

12 NYCRR Part 56 ...................................................................................... 5
29 U.S.C. § 621........................................................................................... 3
Executive Law § 296 ................................................................................... 3
Fed. R. Civ. P. 12(b)(6)........................................................................... 1, 3
NYLL § 740............................................................................................... 12
NYLL § 740(a)(2).....................................................................................3,4
NYLL § 740(7). ......................................................................................... 12

**Treatises**

*Elevator Antitrust Litigation,* 502 F.3d 47, 50 (2d Cir. 2007) ....................................... 4

This Memorandum of Law is respectfully offered on behalf of Defendants Woodner Company ("Woodner" or the "Company") and Jeffrey Burdick (collectively "Defendants") in support of their motion to dismiss the "Amended Verified Complaint" of Plaintiff Lenard Semeraro, and each and every part thereof, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.")

## BACKGROUND

Crestwood Lake Apartments (the "property" or "premises") is the largest apartment development in Westchester County.  It consists of 1,100 units in 66 buildings situated on 55 acres (Burdick Aff. ¶ 3).[1]  The property employs 26 workers, comprising supervisors, porters, handymen, plumbers, painters and grounds men.  In addition, the Company employs 1 General Manager, 3 rental agents and office employees at the premises (Burdick Aff. ¶ 4).

The wages, hours and other terms and conditions of the janitorial and maintenance staff, including Mr. Semeraro, were governed by a collective bargaining agreement ("CBA") between Woodner and Service Employees International Union Local 32BJ ("Local 32BJ" or the "Union") (Burdick Aff. ¶ 5).

At all times pertinent hereto, Scott Kessler has been employed by the Company as its Executive Vice President; Jeffrey Burdick has been employed as the General Manager of the property; and Leonard Semeraro ("Plaintiff") was employed as the Superintendent of the janitorial and maintenance staff, the highest-ranking non-executive employee at the premises (Burdick Aff. ¶¶ 6, 7 and 8).

Although the Company continually invests in the maintenance and upkeep of the property, starting in 2015, Woodner made major capital investments in upgrading and renovating the property.  The Company invested millions of dollars on major capital improvements such as

---

[1] Reference is made to the Affidavit of Jeffrey Burdick sworn to the 19th day of January, 2018.

installing new roofs on buildings, re-engineering trash removal systems, replacing seventeen (17) antiquated playgrounds and undertaking a massive re-landscaping of the property to improve aesthetics and increase property value (Burdick Aff. ¶ 9).

Because of the huge expenditure of funds, the Company's ownership, together with Messrs. Kessler and Burdick increased their scrutiny of the property and conducted inspections (Burdick Aff. ¶ 10). These inspections revealed a shocking state of disrepair that threatened to undo all of the improvements that the Company was attempting to make (Burdick Aff. ¶ 11). As detailed in the Burdick affidavit, there were literally hundreds of serious maintenance and repair problems (Burdick Aff. ¶ 12). Some of these problems were merely unsightly; others were dangerous and posed a serious risk of liability to the Company (Burdick Aff. ¶ 13).

When these problems came to light, the Company issued written instructions to Mr. Semeraro directing him to make a list of all conditions that required remediation (Burdick Aff. ¶ 14). Mr. Semeraro created the list as directed. However, the list contained only a small fraction of the conditions that had already been observed and was, therefore, unsatisfactory (Burdick Aff. ¶ 15). For that reason, it was decided to re-structure the supervision at the property, re-allocate Mr. Semeraro's responsibilities to other supervisors, and to eliminate his position as redundant (Burdick Aff. ¶ 16). Accordingly, Mr. Semeraro's employment was terminated effective July 28, 2017 (Burdick Aff. ¶ 17).

## THE LITIGATION

Following Mr. Semeraro's termination, he filed a grievance with Local 32BJ alleging that the termination violated the "just cause" requirement for discharge or discipline contained in the CBA (Burdick Aff. ¶ 20). The grievance is still pending (Burdick Aff. ¶ 21).

On or about October 17, 2017, Mr. Semeraro filed a Verified Complaint in the Supreme Court of the State of New York, County of New York sub nom. *Leonard Semeraro v. Woodner Company and Jeff Burdick*, Index No. 656422/2017 (Burdick Aff. ¶ 22). The action was

subsequently removed the action from the Supreme Court of the State of New York, County of New York to the United States District Court for the Southern District of New York on November 3, 2017 (Doc. No. 1) (Burdick Aff. ¶ 24).

The Plaintiff filed a revised pleading styled "Amended Verified Complaint" on December 19, 2017 (Burdick Aff. ¶ 27) (DOC. NO. 11).[2] It alleges four (4) causes of action:

(a)    retaliatory discharge in violation of New York State's "whistleblower statue" (Labor Law § 740(a)(2)),

(b)    age discrimination in violation of New York State's Human Rights Law (Executive Law § 296; "NYSHRL"),

(c)    age discrimination in violation of the federal Age Discrimination in Employment Act (29 U.S.C. § 621 *et seq.*; "ADEA"), and

(d)    breach of the collective bargaining agreement.

(Burdick Aff. ¶ 28)

It is these causes of action that Defendants now move to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).

## DISCUSSION

### The Legal Standard

In the case of *Catapano-Fox v. City of New York,* 2015 U.S. Dist. LEXIS 75875 (S.D.N.Y. June 11, 2015), the Court summarized the applicable standards of law for a motion to dismiss:

> When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court should "draw all reasonable inferences in Plaintiff['s] favor, assuming all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement of relief." *Faber v. Metro. Life Ins. Co.,* 648 F.3d 98, 104) (2d Cir. 2011).  Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim

---

[2] This document is referred to in the Docket as Plaintiff's "First Amended Complaint" (DOC. NO. 14).

to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570(2007)). "While *Twombly* does not require a heightened fact pleading of specifics, it does require enough facts to 'nudge [a plaintiff's] claims across the line from conceivable to plausible.'" *In re Elevator Antitrust Litigation*, 502 F.3d 47, 50 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 570). "Where a complaint pleads facts that are 'merely consistent with a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). Moreover, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 663.

Similarly, in *Hettler v. Entergy Enterprises*, 15 F. Supp.3d 447, 451 (S.D.N.Y. 2014), the Court held that "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

**The Whistleblower Claim**

§ 740(2)(a) of the New York Labor Law ("NYLL") provides that an employer shall not take any retaliatory personnel action against an employee who . . .(a) discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer that is in violation of law, rule or regulation which violation creates and presents a substantial and specific danger to the public health and safety. See, *Nadkarni v. North Shore Long Island Jewish Health System*, 2003 U.S. Dist. LEXIS 265529E.D.N.Y. July 31, 2003).

Plaintiff's Whistleblower claim fails on all three counts.

First, Defendants did not retaliate against the Plaintiff. Mr. Semeraro did not complain about the presence of asbestos at the premises to the Company and did not threaten to disclose the presence of asbestos to any public authority or agency (Burdick Aff. ¶ 18). Although he alleges that he complained to Mr. Burdick about the asbestos, Plaintiff's pleadings are totally devoid of facts detailing any such complaints or threats.

4

Further, by his own admission, Plaintiff did not report the asbestos to OSHA until September, 2017 – well over a month after he was terminated (DOC. NO. 11, ¶17; Burdick Aff. ¶ 44).

"To run afoul of the [whistleblower] statute, [however,] the adverse action must be taken 'because' the employee engaged in protected activity.  In other words, the whistleblower statute, like the anti-discrimination laws, requires some casual connection between an adverse personnel action and a report of dangerous activity.  *Duarte v. St. Barnabas Hospital*, 2017 U.S. Dist. LEXIS 148441 (S.D.N.Y. September 13, 2017) (*emphasis added*), citing *Varughese v. Mount Sinai Med. Ctr.,*2015 U.S. Dist. LEXIS 43758 (S.D.N.Y. March 27, 2015), aff'd, 2017 U.S.App. LEXIS 12123 (2d Cir. July 7, 2017).

Here, there can be no "causal connection" between the adverse personnel action and the report of dangerous activity because the Defendants lacked the requisite *scienter* of any alleged protected activity on Plaintiff's part.

Second, Defendants engaged in no an activity, policy or practice that is in violation of law, rule or regulation.  The mere presence of asbestos on the premises is not a violation of law, rule or regulation.  Plaintiff cited only one regulation to support his claim: 12 NYCRR Part 56. This citation, however, is inapposite; it only regulates education, training, certification, licensing and procedures to be followed when work is performed upon asbestos.  Section 56-1.2 provides in pertinent part:

> It is the purpose and intent of this Part to reduce the risks to the public associated with risks of exposure to asbestos and to conform to Federal requirements set forth in the Asbestos Hazard Emergency Response Act (AHERA),[3] National Emissions Standards for Hazardous Air Pollutants (NESHAP) [4] and Occupational Safety and Health Administration (OSHA) Asbestos Standard for the Construction Industry, by requiring appropriate training and certification of persons employed in all aspects of an asbestos project, as well as those who supervise and employ them;  by requiring the licensing of asbestos contractors; by

[3] This legislation deals with asbestos in schools.
[4] These standards, established by the Environmental Protection Agency (EPA), govern procedures to be used in handling asbestos and is the federal analog to 12 NYCRR Part 56.

setting forth standards and procedures that shall be followed when removing, enclosing, encapsulating, repairing or disturbing friable or non-friable asbestos or handling asbestos or asbestos materials in a manner which may result in the release of asbestos fiber; by requiring notification of the Department of Labor prior to the commencement of large asbestos projects; by requiring notice of building/structure occupants; by requiring asbestos surveys; by setting forth record-keeping and reporting requirements for asbestos contractors; and by establishing an inspection and enforcement program within the Department of Labor.

New York's highest court, the Court of Appeals, has held that, in order to invoke the protections of the Whistleblower Statue, proof of the employer's "actual violation of law" is required. *Bordell v. General Electric Co.,* 88 N.Y.2d 869 (1966) (*emphasis added*); *Barker v. Peconic Landing at Southold,* 885 F.Supp.2d 564, 569 (E.D.N.Y. 2012). An employee's reasonable or good faith belief that a law has been violated is not enough. *Id. at 870.* An employee who "blows the whistle" on an employer on conduct which falls outside of the ambit of § 740 does so at his own risk; the statute provides no protection. *Collette v. St. Luke's Roosevelt Hospital*, 132 F.Supp.2d 256, 268 (S.D.N.Y. 2001).

Because Plaintiff has failed to plead an actual violation of law, his "Whistleblower Claim" must be dismissed.

Third, in order to state a "Whistleblower Claim," a plaintiff must show that the employer's actual violation of law, rule or regulation creates and presents a substantial and specific danger to the public health and safety. The statute has been construed as requiring "a certain quantum of dangerous activities before its remedies are implicated." *Peace v. KRNH, Inc.,* 12 A.D.3d 914 (3d Dep't 2004). Misconduct that may pose a danger only to certain residents does not "threaten the health or safety of the public at large." See, *Green v. Saratoga A.R.C.*, 233 A.D.2d 821 (3d Dep't 1996); *Kern v. DePaul Mental Health Services*, 152 A.D.2d 957 (4th Dep't 1989). In *Leibowitz v. Bank Leumi Trust Co.,* 152 A.D.2d 169 (2d Dep't 1989), the Court cited examples of the types of threats to public health and safety contemplated by the

statute: the pesticide plant at Bhopal, the accident at Three Mile Island, the manufacture and distribution of Thalidomide and the Challenger Space Shuttle disaster.

Moreover, Plaintiff's First Amended Complaint contains <u>no</u> <u>factual</u> <u>allegations</u> whatever detailing the "specific and substantial" danger to the health and safety of the public at large threatened by the Defendants' conduct.   Instead, Plaintiff rests solely on unsubstantiated conclusions (DOC. NO. 11, ¶¶ 26, 27).

The failure to plead facts to substantiate <u>any</u> of the three (3) elements of a cause of action under New York's "Whistleblower Statute" would be fatal.  Plaintiff has failed to substantiate <u>all</u> of them.  Accordingly, the retaliation claim must be dismissed.

**<u>The Age Discrimination Claim Under the New York State Human Rights Law</u>**

Plaintiff alleges that he "was deliberately targeted by Defendant Burdick for his age. Defendants allegedly passed Plaintiff up for promotion in favor of another staff member because, as Defendant Burdick allegedly stated, "he was younger and college educated," created a "hostile work environment, harassed him and ultimately terminated him, all on account of age (DOC. NO. 11, ¶¶ 20, 31).

Plaintiff has failed to plead sufficient facts to establish a claim.  Therefore, this cause of action must be dismissed.

To evaluate claims of discrimination under the NYSHRL, courts apply the "burden shifting framework" laid out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). In order to establish a *prima facie* case of discrimination, plaintiff must show (1) he was a member of a protected class, (2) he was qualified for the position in question, (3) he suffered an adverse employment action, and (4) the adverse employment action took place under circumstances giving rise to an inference of discrimination.  See, *McGill v. University of Rochester*, 600 F.App'x 789, 790 (2d Cir. 2015).

At the pleadings stage, a plaintiff does not need to prove discrimination, or even allege facts establishing every element of a *prima facie* case, but must allege facts giving "plausible support to the reduced requirements" of the *prima facie* case. *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015); *Dawson v. New York City Transit Authority*, 624 F. App'x 763, 765 (2d Cir. 2015); *Williams v. New York City Housing Authority*, 458 F.3d 67, 71 ((2d Cir. 2006). Specifically,

> Absent direct evidence of discrimination, what must be plausibly supported by facts alleged in the complaint is that the plaintiff is a member of a protected class, was qualified, suffered an adverse employment action, and has at least minimal support for the proposition that the employer was motivated by discriminatory intent. The facts alleged must give plausible support to the reduced requirements that arise under *McDonnell Douglas* in the initial stage of the litigation.

> (*Littlejohn*, 795 F.3d at 311; *emphasis added*)

In the case at hand, Plaintiff couches his claim in conclusory terms, but offers no facts. Plaintiff alleges that he was subject to harassment, exposed to a hostile work environment "permeated with discriminatory intimidation, ridicule and insult that were sufficiently severe and pervasive to alter the conditions of Plaintiff's employment" and, ultimately, terminated (DOC. NO. 11, ¶¶ 31, 32). There is no description of what was allegedly done to Plaintiff, by whom, when and how often. Without such details, the Plaintiff's pleading amounts to the mere "threadbare recitation of the elements of a cause of action" that the Court in *Catapano-Fox v. City of New York,* supra. held was insufficient. See, *Wooding v. Winthrop University Hospital*, 2017 U.S. Dist. LEXIS 90559 (E.D.N.Y. June 12, 2017).

Plaintiff also alleges that he was passed up for promotion because of his age (DOC. NO. 11, ¶¶ 20, 30). This is, perhaps, the most puzzling of all the claims contained in the Plaintiff's Complaint. At all times, Plaintiff was the highest-ranking, highest paid non-executive employee at the property (Budick Aff. ¶¶ 55, 56). He was in charge of the staff; there was literally no higher position to promote him to and nobody was promoted over him (Burdick Aff. ¶ 55).

Plaintiff compounds the mystery by failing to identify who was allegedly promoted, what position was involved, what the qualifications of the respective candidates were or when the alleged promotion took place.  In order to evaluate a claim of "disparate treatment" such as this, the Plaintiff is obligated to offer facts concerning employees not in the protected class who were allegedly treated differently.  *Weslowski v. Zugibe,* 14 F.Supp.3d 295 (S.D.N.Y. 2014).  Without specifics, a bare allegation is too vague to support a claim of disparate treatment.  *Offor v. Mercy Medical Center*, 167 F.Supp.3d 414, 432 (E.D.N.Y. 2016).

All of this takes place against the backdrop of an employer that has never previously been charged with age discrimination by Mr. Semeraro or anybody else and which employs a staff containing more than 30% of employees over the age of 50, including Mr. Burdick.  Several of them are older than the Plaintiff (Burdick Aff. ¶¶ 60, 61). [5]

For the reasons set forth above, Plaintiff's alleged claim of age discrimination in violation of the New York State Human Rights Law must fail.  It is based entirely on conclusions, not facts.

## The Age Discrimination Claim Under the Age Discrimination in Employment Act

Plaintiff alleges that he was refused promotion and ultimately terminated for pretextual reasons, among other things, because of his age in violation of the ADEA (DOC. NO. 11, ¶¶ 37, 38).

Plaintiff's claims under the ADEA must fail for both substantive and procedural reasons.

New York and Federal courts apply the same elements and burdens of proof in evaluating age discrimination claims under the NYSHRL and the ADEA. See, *Vaughn v. Mobil Oil Corp.,*708 F.Supp. 595, 599 (S.D.N.Y. 1989); *Miller Brewing Co. v. State Division of Human Rights*, 66 N.Y.2d 937 (1985).  For that reason, Defendants respectfully repeat, re-assert and re-

---

[5] Defendants are aware that the age-protected class begins at 40.  However, the age of 50 was selected for this discussion because that age was more comparable with Plaintiff's age.

allege all of the substantive arguments offered in their discussion of Plaintiff's allegations of age discrimination in violation of the NYSHRL with two (2) important additions.

First, the claim against Defendant Burdick must be dismissed in its entirety. The ADEA does not provide for individual liability. Only the employer may be named as a defendant. *Chowdhury v. Sadovnik*, 2017 U.S. Dist. LEXIS 149691 (E.D.N.Y. September 14, 2017; *Guerra v. Jones*, 421 F.App'x 15, 17 (2d Cir. 2011); *Khaleel v. F.J.C. Sec. Servs, Inc., 2016 U.S. Dist. LEXIS 114841 ((E.D.N.Y. August 26, 2016).*

Second, the ADEA mandates that an administrative charge of age discrimination must be filed with the Equal Employment Opportunity Commission or a State or Local Fair Employment Practice Agency (such as the New York State Division of Human Rights) before an ADEA lawsuit can be filed in a court of competent jurisdiction. See, *Oscar Mayer & Co. v. Evans,* 41 U.S. 750 (1979). There are two (2) main purposes for the charge-filing requirement. First, the charge gives the EEOC or other Fair Employment Practice Agency notice of the alleged discriminatory action so that it can investigate and attempt to stop, prevent or remedy such practices. Second, the charge provides notice to the employer to make it aware of the allegations and to provide it with the opportunity to take corrective action.

Section 7(d) of ADEA, 29 U.S.C. § 626(d), details the requirement for filing a charge of discrimination:

> No civil action may be commenced by an individual under this section until 60 days after a charge alleging unlawful discrimination has been filed with the Equal Employment Opportunity Commission.

Section 14(b) of ADEA, 29 U.S.C. § 633(b), sets forth the parameters of charge to be filed with the EEOC and state agencies in states with age discrimination laws (such as New York):

> In the case of an alleged unlawful practice occurring in a State which has a law prohibiting discrimination in employment because of age and establishing or authorizing a State authority to grant or seek relief from such discriminatory

practice, no suit may be brought under Section 626 of this title before the expiration of 60 days after proceedings have been commenced under the State law, unless such proceedings have been earlier terminated . . . .

Plaintiff has failed to satisfy these requirements in the case at hand.  Therefore, in addition to being substantively deficient, Plaintiff's ADEA claim is procedurally defective.  For these reasons, it must be dismissed.

## The Breach of the Contract Claim

Plaintiff ages that the Defendants breached the CBA with Local 32BJ by terminating him without "good and just cause" and by requiring him to vacate a storage unit on the premises (DOC. NO. 11, ¶¶ 41 – 44).

Plaintiff's claim is defective as a matter of law and must be dismissed.

Subsequent to Plaintiff's termination, he filed a grievance with Local 32BJ alleging that his termination violated the "just cause" requirement for discharge or discipline contained in the CBA (Burdick Aff. ¶ 20).  The grievance is still pending (Burdick Aff. ¶ 21).

In general, before an employee may sue his employer for breaching a CBA, that "employee is required to attempt to exhaust any grievance or arbitration remedies provided in the collective bargaining agreement."  *DelCostello v. International Brotherhood of Teamsters*, 462 U.S.151, 161 (1983). Even if a plaintiff failed to exhaust the CBA's grievance procedure, however, "a wrongfully discharged employee may bring an action against [the] employer in the face of a defense based upon the failure to exhaust contractual remedies, provided that the employee can prove that the union as bargaining agent breached its duty of fair representation in its handling of the employee's grievance."  *Doyle v. United Airlines, Inc.,* 914 F.Supp.2d 325, 328 (E.D.N.Y. 2012), citing *Vaca v. Sipes,* 386 U.S. 171, 186 (1967); *DeFrancesco v. Bottalico*, 2011 U.S. Dist. LEXIS 144979 (S.D.N.Y.  Dec. 16, 2011).  In the context of a motion to dismiss, an employee who is subject to a CBA alleging wrongful discharge is "normally bound by the

result of the CBA-governed grievance procedure, even if a meritorious grievance was lost because of poor judgment on the part of the union officials who handled the grievance.  The principal exception to this rule arises where an employee can prove that the grievance was lost because, in handling the grievance, the union breached its duty of fair representation.  Citing *Vaca*, 386 U.S at 184-186).  To properly plead such a claim, the employee must allege both "(1) that the employer breached a collective bargaining agreement, and (2) that the union breached its duty of fair representation in redressing [the] grievance against the employer.  *White v. Rose Food,* 128 F.3d 110, 113(2d Cir. 1997).

In the case at hand, the Plaintiff has failed to plead either that he exhausted the contractual grievance procedure embodied in the CBA [6] or that Local 32BJ somehow breached its duty of fair representation in handling his grievance.  Therefore, Plaintiff's claim of breach of contract is defective as a matter of law and must be dismissed. [7]

## Waiver of Claims Under NYLL 740(7)

To the extent that the Plaintiff's vague and conclusory allegations suggest a claim that he was terminated for his alleged "whistleblowing activities" under some statute, rule, law, regulation, contract or collective bargaining agreement other than NYLL § 740, such claim must be deemed waived pursuant to NYLL § 740(7).

NYLL § 740(7) provides in pertinent part:

Nothing in this section shall be deemed to diminish the rights, privileges or remedies of any employee under any other law or regulation or under any collective bargaining agreement or any employment contract;        except that the institution of an action in accordance with this section shall be deemed a waiver of the rights and remedies available under any other contract, collective bargaining agreement, law, rule, regulation or under the common law.

---

[6] Attached to the Burdick Affidavit as Exhibit "A"

[7] It must be noted in passing that this claim must be dismissed against Defendant Burdick in any event because he is not a party to the CBA.  See, *Food & Commercial Workers v. Mulder*, 31 F.3d 365 (6th Cir. 1994).

Despite the facial appearance of a broad-based waiver of any other claim once a "whistleblower" action has been commenced, the statute has been interpreted to mean that any claim of discrimination based upon whistleblower activities under any other law or contract is deemed waived. *Collette v. St. Luke's Roosevelt Hospital*, 132 F.Supp.2d 256 (S.D.N.Y. 2001).

Because the Plaintiff's allegations are disorganized, vague, conclusory and overly broad, it is difficult to identify all of his claims with certainty.  For example, he alleges that his termination lacked "good and just cause" as required by the CBA.  Although the First Amended Complaint does not state so explicitly, this allegation could conceivably be interpreted to mean that Plaintiff's termination lacked "good and just cause" because he was, in reality, discharged for whistleblowing.  To the extent any such claim is inferred or suggested, it must be deemed waived.

## CONCLUSION

Mr. Semeraro was the Superintendent of Crestwood Lake Apartments, the largest residential development in all of Westchester County.  In that capacity, he presided over a vast expanse of land, scores of buildings and dozens of employees.  He sat atop the very pinnacle of the workforce at the property.  Unfortunately, there came a time when the Company's ownership and executive staff determined that this huge property was deteriorating under the Plaintiff's stewardship.  Accordingly, he was let go and a new management structure was put in place.

After many years without ever complaining about his treatment at the hands of the Company, Mr. Semeraro now comes before the Court in an attempt to convince everybody that he was besieged by discriminatory harassment, a hostile work environment, a failure to receive promotion, retaliation and, ultimately, termination – all for, allegedly, invidious and unlawful reasons.

However, when the Plaintiff's pleadings are scrutinized with a discerning and analytical eye, they are revealed for what they really are: mere "threadbare recitals" of the elements of

various claims.  They are populated by ambiguities, generalizations and conclusions; conversely, they are almost entirely devoid of allegations of fact.

Further, Plaintiff 's pleadings fail to satisfy the elements of each of his claims, leaving then fatally defective.

For all of the reasons set forth above, the Defendants, the Woodner Company and Jeffrey Burdick, respectfully pray for an Order dismissing the First Amended Complaint of the Plaintiff, Leonard Semeraro, and for such other and further relief as to this Honorable Court may seem just and proper.

Dated: January 19, 2018

Respectfully submitted,

/s/ Perry S. Heidecker
Perry S. Heidecker, Esq.
Milman Labuda Law Group PLLC
Attorneys for Defendants
3000 Marcus Avenue, Suite 3W8
Lake Success, NY  11042