UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LEONARD SEMERARO,

                      Plaintiff,

- against -

THE WOODNER COMPANY and JEFF BURDICK,

                      Defendants.

**OPINION AND ORDER**

17 Civ. 8535 (ER)

Ramos, D.J.:

      Leonard Semeraro brings this action against the Woodner Company ("Woodner") and Jeff Burdick ("Burdick"), in their official and individual capacities (together, "Defendants"), alleging employment discrimination, retaliation, and breach of contract. Before the Court is Defendants' motion to dismiss Semeraro's Amended Verified Complaint. For the reasons discussed below, Defendants' motion is GRANTED without prejudice.

**I. BACKGROUND**

      Semeraro is a 53-year old male who is currently residing in Wallkill, New York. Am. Compl. ¶¶ 3, 30, Doc. 11. Until his termination on July 27, 2017, he was employed by Woodner, headquartered at 21 E. 67th Street, New York, NY 10065. *Id.* ¶¶ 4, 23. In his 34 years of service, Semeraro held various positions at the company, but ultimately held the position of Superintendent at Crestwood Lake Compound (the "Premises"). *Id.* ¶¶ 6–7. At all relevant times, Semeraro's supervisor was Burdick, the General Manager of the Premises. *Id.* ¶ 5. During his employment, Semeraro was a member of Service Employees International Union Local 32BJ ("Local 32BJ"). *Id.* ¶ 8. The terms and conditions of his employment were

governed by a collective bargaining agreement ("CBA") between Woodner and Local 32BJ. *Id.* ¶ 21–22.

Semeraro claims that he was subjected to discriminatory practices based on his age. He primarily alleges that Burdick promoted another staff member instead of him because the staff member was "younger and college educated." *Id.* ¶ 20.

In support of his discrimination claim, Semeraro describes a number of instances in which he felt he was singled out or treated unfairly. For example, Burdick allegedly subjected him to a smear campaign by soliciting a contractor to provide false testimony stating that Semeraro improperly received money from the contractor. *Id.* ¶ 11–12. In addition, Burdick demoted his son without good and just cause as part of the smear campaign. *Id.* ¶ 15. Moreover, Burdick allegedly forced Semeraro to answer questions concerning his private life and finances. *Id.* ¶ 14.

Semeraro also claims that Defendants retaliated against him by firing him following his filing a September 2017 complaint with the Occupational Safety and Health Administration ("OSHA") that detailed the presence of asbestos in the garages on the Premises in violation of New York State regulation 12 NYCRR Part 56. *Id.* ¶¶ 17, 26. After the report of asbestos reached OSHA, Defendants allegedly told him to "mind his own business" and "stop causing trouble." *Id.* ¶ 16.

Lastly, Semeraro claims that his termination breached the terms of the CBA because Defendants failed to provide "good and just cause" for the termination. *Id.* ¶ 41. On July 28, 2017, Defendants ordered Semeraro's storage unit removed from the Premises in violation of Article 6 of the CBA which states that "until good and just cause for termination is established, Employer shall not remove from the [P]remises any of the belongings of the said employee." *Id.*

2

¶ 44. Semeraro alleges that while he was terminated on the purported basis that the "grounds [were] not being kept," his job duties do not include ground keeping. *Id.* ¶ 19.

## II. PROCEDURAL HISTORY

On or about October 2017, Semeraro filed a Verified Complaint in the Supreme Court of the State of New York, County of New York. *See* Doc. 1, Ex. 1. The Verified Complaint alleged five causes of action: (1) work environment harassment; (2) retaliatory discharge in violation of New York State's Whistleblower Statute, Labor Law § 740; (3) age discrimination in violation of New York State's Human Rights Law ("NYSHRL"); (4) age discrimination in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621; and (5) breach of the CBA in violation of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 141. *Id.* Prior to the initiation of this lawsuit, Semeraro never filed a charge with the EEOC or NYSDHR. Pl.'s Mem. Opp'n at 15–16, Doc. 25.

On November 3, 2017, Defendants removed the action to the United States District Court for the Southern District of New York. *See* Doc. 1. Semeraro then dropped the work environment harassment claim in an Amended Verified Complaint on December 19, 2017. *See* Doc. 11. Defendants now move to dismiss Semeraro's remaining four claims. *See* Doc. 21.

## III. LEGAL STANDARD

When ruling on a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Nielson v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014). The Court is not required to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "To survive a motion to dismiss, a complaint

must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. 556). More specifically, the plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* If the plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570; *see Iqbal*, 556 U.S. at 680.

On a Rule 12 motion to dismiss, the question "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 615 (S.D.N.Y. 2012) (quoting *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 278 (2d Cir. 1995)) (internal quotations marks omitted). "[T]he purpose of Federal Rule of Civil Procedure 12(b)(6) 'is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits,'" and without regard for the weight of the evidence that might be offered in support of the plaintiff's claims. *Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011) (quoting *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006)).

## IV. DISCUSSION

Semeraro asserts four causes of action. First, Semeraro claims age discrimination pursuant to the ADEA. Second, Semeraro claims age discrimination in violation of the NYSHRL. Third, Semeraro claims that Defendants retaliated against him in violation of Labor Law § 740. Fourth, and finally, Semeraro claims breach of the CBA in violation of the LMRA. The Court addresses each claim in turn.

### A. ADEA Claim

#### 1. Semeraro Failed to Establish a Prima Facie Case.

Employment discrimination claims under the ADEA are analyzed under the burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Kovaco v. Rockbestos-Surprenant Cable Corp.*, 834 F.3d 128, 136 (2d Cir. 2016). Under the framework, the plaintiff must first establish a *prima facie* case of discrimination. *McDonnell Douglas*, 411 U.S. at 802. Once the plaintiff establishes a *prima facie* case, the burden shifts to the defendant to offer a legitimate, nondiscriminatory reason for its actions. *Id.* at 802–03. If the defendant satisfies its burden, the burden shifts back to the plaintiff to demonstrate that the proffered reason is pretextual. *Id.* at 803. Ultimately, the plaintiff will be required to prove that the defendant acted with discriminatory motivation. *See Littlejohn v. City of New York*, 795 F.3d 297, 307 (2d Cir. 2015). At the pleading stage, however, the facts alleged must merely "give plausible support to the reduced requirements that arise under *McDonnell Douglas* in the initial phase" of the case. *Id.* at 311. Thus, the question on a motion to dismiss is whether the plaintiff has adequately pleaded a *prima facie* case.

In order to establish a *prima facie* case of discrimination under the ADEA, the plaintiff must show that (1) he is within the protected age group; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discriminatory intent. *See Terry v. Ashcroft*, 336 F.3d 128, 137–38 (2d Cir. 2003).

Semeraro plainly satisfies the first two elements. First, Semeraro was 53 years old at the time of filing the Amended Verified Complaint. Am. Compl. ¶ 30. He thus qualifies for

protection under the ADEA. *See* 29 U.S.C. § 631 (2012) (limiting the ADEA's protections to persons who are at least forty years of age).

Second, Semeraro offers his 34 years of service as evidence of his qualifications for the position. Am. Compl. ¶ 33. Defendants dispute his qualifications by alleging that the condition of the property deteriorated under his supervision as Superintendent. Defs.' Mem. Supp. at 2, Doc. 23. However, the Second Circuit characterizes the evidence necessary to establish this burden as 'minimal' and 'de minimis.' *See Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 76–77 (2d Cir. 2005) (qualifying 16 years of service as a "wealth of experience" evidencing a plaintiff's qualifications). Here, the fact that Defendants hired and employed Semeraro for 34 years is sufficient to meet this minimal showing. Moreover, Defendants' objection blurs the "analytical distinction between (i) qualification for a job and (ii) disqualification arising from a legitimate, non-discriminatory, reason for an adverse employment decision." *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 171 (2d Cir. 2006); *see also Thornley v. Penton Pub., Inc.*, 104 F.3d 26, 29–30 (2d Cir. 1997); *Owens v. New York City Hous. Auth.*, 934 F.2d 405, 409 (2d Cir. 1991) ("[M]isconduct is distinct . . . from the issue of minimal qualification to perform a job."). Pursuant to *Sista*, Defendants' proffered reasons for disqualification have no bearing on whether Semeraro met the minimal qualifications to perform the job. Put another way, the fact that Semeraro was not doing the job well does not mean he was not qualified to do it. Thus, Semeraro has satisfied the second element of his *prima facie* ADEA claim.

Semeraro's discrimination claim, however, fails upon reaching the third element, as he fails to properly allege that he suffered an adverse employment action as contemplated by the ADEA. An "adverse employment action" is one that causes a "materially adverse change in the terms and conditions of employment." *Galabya v. New City Bd. of Educ.*, 202 F.3d 636, 640 (2d

Cir. 2000). "To be 'materially adverse' a change in working conditions must be 'more disruptive than a mere inconvenience or an alteration of job responsibilities.'" *Id.* (quoting *Crady v. Liberty Nat'l Bank & Trust Co. of Ind.*, 993 F.2d 132, 136 (7th Cir. 1993)). Examples of materially adverse employment actions include "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation." *Id.* (quoting *Crady*, 993 F.2d at 136); *see also Feingold v. New York*, 366 F.3d 138, 152–5 3 (2d Cir. 2004); *Pacheco v. N.Y. Presbyterian Hosp.*, 593 F. Supp. 2d 599, 616–17 (S.D.N.Y. 2009).

In the instant case, Semeraro offers inconsistent grounds to support his claim of an adverse employment action.[1] Semeraro's allegation in the Amended Verified Complaint that he was passed for a promotion does not constitute an adverse employment action. While Second Circuit case law provides that a failure to promote may constitute an adverse employment action, *Treglia v. Town of Manlius*, 313 F.3d 713, 720 (2d Cir. 2002), in order to state such a claim, a plaintiff must show that he "applied for a position and was rejected," *Sethi v. Narod*, 12 F. Supp. 3d 505, 525 (E.D.N.Y. 2014) (citing *Petrosino v. Bell Atl.*, 385 F.3d 210, 226–27 (2d Cir. 2004)), a factual allegation that is wholly lacking here.

Recognizing the insufficiency of his allegations, Semeraro seeks to buttress his claims by submitting an affidavit in which he asserts that, as a result of his age, he was given diminished responsibilities amounting to a demotion. Semeraro Aff. ¶ 45, Doc. 24. But those extrinsic allegations are not properly considered on a motion to dismiss. Rather, in ruling on a motion to dismiss pursuant to Rule 12(b)(6), a district court generally must confine itself to the four corners

---

[1] Although Semeraro was terminated, he pleads his termination as evidence in support of his retaliation claim and not his age discrimination claims. Am. Compl. ¶ 26. The Court therefore does not consider his termination as evidence of age discrimination.

7

of the complaint and look only to the allegations contained therein. *See Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007); *Friedl v. City of New York,* 210 F.3d 79, 83 (2d Cir. 2000) (noting that where extrinsic materials are submitted to the Court for consideration in connection with a 12(b)(6) motion, the additional materials must either be excluded, or the motion must be converted to one for summary judgment). Nor are Semeraro's affidavits integral to the Amended Verified Complaint such that they should be considered as a matter of exception. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (considering a contract in a partnership agreement integral to a complaint where the complaint relies heavily upon its terms and effects); *see also Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 156 (2d Cir. 2006) (allowing courts to consider extrinsic evidence, as a matter of exception, only if the matters are integral to the complaint). As Semeraro fails to properly allege any adverse employment action within his Amended Verified Complaint, his claim is dismissed.

### 2. Semeraro Failed to Exhaust Administrative Remedies.

In order to bring a claim under the ADEA, a plaintiff must first exhaust his administrative remedies with the EEOC or the equivalent state-level agency. *See Holowecki v. Fed. Exp. Corp.*, 440 F.3d 558, 562–63 (2d Cir. 2006). Before a plaintiff may file a federal suit under the ADEA: (1) the claim forming the basis of the suit must first be raised in the plaintiff's charge with the EEOC or the equivalent state agency, and (2) the charge must be filed with the EEOC within 180 days of the allegedly unlawful act, or with the equivalent state agency within 300 days. *See Williams v. N.Y.C. Hous. Auth.*, 458 F.3d 67, 69 (2d Cir. 2006). ADEA plaintiffs need only wait sixty days after filing the EEOC or NYSDHR charge before bringing suit. *Holowecki*, 440 F.3d at 563 (quoting *Hodge v. N.Y. Coll. of Podiatric Med.*, 157 F.3d 164, 166 (2d Cir. 1998)).

Failure to exhaust these administrative remedies constitutes a failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). *Williams*, 458 F.3d at 70.

Although this Court has dismissed the ADEA claims, it nonetheless reaches Defendants' exhaustion claim as an alternative ground for the claim's dismissal. While Semeraro concedes that he failed to exhaust administrative remedies because he did not file a charge with the EEOC or the NYSDH before bringing the present action, Pl.'s Mem. Opp'n at 15–16, he asserts that he should be entitled to an equitable exception because Defendants failed to provide him with an official statement for his cause of termination.[2] Pl.'s Mem. Opp'n at 16.

Although timely filing of an EEOC charge is subject to equitable estoppel or tolling, *see Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 395 n. 11 (1982) (holding that the charge requirement is not a jurisdictional prerequisite to maintaining an action under the ADEA), those doctrines apply only in narrow circumstances. Equitable estoppel may be invoked in cases where the employer has misrepresented the length of limitations period for filing discrimination complaints or in some way has lulled the plaintiff into believing that it was not necessary for him to commence litigation. *Dillman v. Combustion Eng'g, Inc.*, 784 F.2d 57, 61 (2d Cir. 1986). Equitable tolling may be invoked when an employer's misleading conduct is responsible for the employee's unawareness of his cause of action. *See id.* at 60.

Here, Semeraro fails to plead any of the circumstances where an equitable exception may be invoked. First, equitable estoppel is inappropriate because he makes no allegations suggesting that Defendants lulled him into believing it was not necessary for him to commence

---

[2] In any event, the Court finds Semeraro's equitable exception defense flawed because his termination is not the basis for his ADEA claim. Semeraro bases his ADEA claim on the allegation that Burdick promoted another staff member because the staff member was "younger and college educated." Am. Compl. ¶ 20. Semeraro thus had cause to claim age discrimination notwithstanding Defendants' alleged failure to provide him with a cause of termination.

9

litigation. Second, equitable tolling is inappropriate because Semeraro, himself, alleges that he was aware of a potential age discrimination issue. For example, he alleges in his Amended Verified Complaint that Burdick stated that another employee was promoted because "he was younger and college educated." Am. Compl. ¶ 20. The record strongly indicates that Semeraro was therefore aware of his cause of action during the course of his employment, and he points to no case law in which courts have equitably tolled the filing period for an EEOC charge because an employer failed to inform an employee of the basis for their discharge.

In short, the Court finds that Semeraro failed to exhaust all administrative remedies because he failed to file a charge with the EEOC or the NYSDH before bringing the present action. Further, Semeraro's allegations are insufficient to invoke an equitable exception.

### B. NYSHRL Claim

NYSHRL claims for employment discrimination are analyzed under the same standards as the ADEA. *See Tolbert v. Smith*, 790 F.3d 427, 434–35, 439 (2d Cir. 2015); *George v. Prof'l Disposables Int'l, Inc.*, No. 15 Civ. 3385 (RA) (BCM), 2016 WL 3648371, at 7 (S.D.N.Y. June 1, 2016), *adopted by* 2016 WL 3906715 (S.D.N.Y. July 14, 2016); *Cappelli v. Jack Resnick & Sons, Inc.*, No. 13 Civ. 3481 (GHW), 2016 WL 958642, at 7 (S.D.N.Y. Mar. 8, 2016); *Guzman v. Macy's Retail Holdings, Inc.*, No. 09 Civ. 4472 (PGG), 2010 WL 1222044, at 7–8 (S.D.N.Y. Mar. 29, 2010); *see also Aurecchione v. N.Y. State Div. of Human Rights*, 771 N.E.2d 231, 233 (N.Y. 2002) (noting that the ADEA and the NYSHRL "address the same type of discrimination, afford victims similar forms of redress, are textually similar and ultimately employ the same standards of recovery"). Semeraro's age-based discrimination claims under the NYSHRL therefore fail for the same reasons as their counterparts under the ADEA.

### C. Whistleblower Claim

New York State's Whistleblower Statute provides that an employer shall not take any retaliatory personnel action against an employee who discloses or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer that is in violation of the law and creates a substantial and present danger to the public health and safety. N.Y. Lab. Law § 740(2) (McKinney 2006). At the pleading stage, a plaintiff must (1) specify that an actual violation occurred, and (2) describe how the defendant's activities endangered the health or safety of the public. *Barker v. Peconic Landing at Southold, Inc.*, 885 F. Supp. 2d 564, 569–70 (E.D.N.Y. 2012).

Here, Semeraro fails to satisfy the first element because he did not properly plead that an actual violation occurred. To demonstrate that an actual violation occurred, Semeraro first alleges that the mere presence of asbestos on the Premises is in violation of 12 NYCRR Part 56. Am. Compl. ¶ 28. That provision regulates the "removing, enclosing, encapsulating, repairing, or disturbing" of asbestos but not the mere presence of asbestos. N.Y. Comp. Codes R. & Regs. tit. 12, § 56-1.2. Consistent with that statutory language, courts in this District have upheld claims brought pursuant to 12 NYCRR Part 56 only where plaintiffs have alleged more than the mere presence of asbestos. *See, e.g.*, *Jones v. Artuz*, No. 01 Civ. 4652 (JES), 2006 WL 2390267, at 3 (S.D.N.Y. Aug. 17, 2006) (friable asbestos); *Pack v. Artuz*, 348 F. Supp. 2d 63, 86 (S.D.N.Y. 2004) (asbestos removal); Crawford v. Artuz, 143 F. Supp. 2d 249, 254 (S.D.N.Y. 2001) (asbestos encapsulation). Semeraro later supplements his claim in his affidavit by asserting that a violation occurred when contractors engaged in work disturbing the asbestos. Semeraro Aff. ¶ 19. Once again, his attempt to cure his Amended Verified Complaint is improper because the Court must confine itself to the four corners of the complaint and look only to allegations

contained therein. *See Roth*, 489 F.3d at 509. Thus, relying on the allegations in the Amended Verified Complaint, the Court concludes that Semeraro fails to allege an actual violation of 12 NYCRR Part 56.

Even if the Court were to consider Semeraro's assertions outside of the Amended Verified Complaint, those assertions are too conclusory to satisfy the first element. For example, Semeraro further asserts that Woodner "engage[d] contractors to do work that would entail disturbing and/or handling asbestos or asbestos materials in a manner which may result in the release of asbestos fiber." Semeraro Aff. ¶ 19. Semeraro's language here merely parrots the language of 12 NYCRR Part 56 prohibiting "handling asbestos or asbestos materials in a manner which may result in the release of asbestos fiber." N.Y. Comp. Codes R. & Regs. tit. 12, § 56-1.2. To state a claim under the Whistleblower statute, an employee must set forth more than conclusory allegations: he must demonstrate an actual violation that amounts to more than a good-faith reasonable belief that a violation has occurred. *See Bordell v. Gen. Elec. Co.*, 88 N.Y.2d 869, 871 (1996).

In cases of potential asbestos violations, Courts in this District have held that mere citation to a statute alleged upon personal belief to have been violated does not state a claim. *See, e.g.*, *Appel v. Schoeman Updike Kaufman Stern & Ascher L.L.P.*, No. 14-CV-2065 (AJN), 2015 WL 13654007, at 18 (S.D.N.Y. Mar. 26, 2015) (dismissing plaintiff's claim that asbestos was disturbed where plaintiff "makes the conclusory allegation that [the defendant] violated Sections 200(1) and 241 of New York's Labor Law and Section 23-1.5(a) of the Industrial Code" and further points to "nothing more than her own personal belief"). Like *Appel*, Semeraro's bare citation to the language of 12 NYCRR Part 56 fails to allege an actual violation because it points to nothing more than his own belief that a violation occurred without alleging the basis for the

12

belief. Thus, Semeraro's threadbare recital fails to meet the strict standards of the first element of a Whistleblower claim.

Semeraro's retaliation claim also fails upon reaching the second element, which has been construed as requiring "a certain quantum of dangerous activities." *Peace v. KRNH, Inc.*, 12 A.D.3d 914, 915 (2004). In particular, in order to survive a motion to dismiss a plaintiff must evince a certain quantum of dangerous activities that demonstrate "adverse consequences" and thereby elevate the level of danger to public safety beyond "mere speculation." *See Cotrone v. Consol. Edison Co. of New York*, 50 A.D.3d 354, 355 (2008) (finding the allegation that two unattended tanker trucks containing hazardous materials created a substantial and specific danger to public health and safety was "based on mere speculation" where the "incident led to no adverse consequences"); *see also Nadkarni v. N. Shore–Long Island Jewish Health Sys.,* 21 A.D.3d 354, 355 (2005) (finding a proposed plan to utilize volunteers to assist employees with service of hospital patients' meal trays did not create a substantial and specific danger to the public health and safety when the proposed plan "was never implemented"); *Peace,* 12 A.D.3d at 915 (finding the activity of a respiratory therapist, who documented results of tests that were never actually performed on a patient, was "simply insufficient to establish the requisite threat to the public health and safety," when the patient at issue "suffered no serious adverse consequences from the alleged lack of care"). Here, Semeraro's allegation is insufficient to establish the requisite threat to public health and safety beyond mere speculation because he fails to demonstrate that the mere presence of asbestos led to any adverse consequences. Rather, Semeraro merely alleges that there was "danger emanating from the presence of asbestos in the garages." Am. Compl. ¶ 26.

As Semeraro fails to properly allege that an actual violation occurred or that the asbestos posed a specific danger to the health or safety of the public, his retaliation claim is dismissed.

**D. CBA Claim**

**1. Semeraro's CBA Claim is not Waived Under § 740.**

Semeraro claims that Defendants breached the CBA because they terminated him "without good and just cause" in violation of the LMRA, 29 U.S.C. § 141. Am. Compl. ¶ 41. Defendants contend that Semeraro's claim under the CBA must be dismissed under Rule 12(b)(6) because it is precluded by the Whistleblower statute, § 740.[3] Defs.' Mem. Supp. at 12. In particular, the statute contains a waiver provision which states: "Nothing in this section shall be deemed to diminish the rights, privileges, or remedies of any employee under any other law or regulation or under any collective bargaining agreement or employment contract; except that the institution of an action in accordance with this section shall be deemed a waiver of the rights and remedies available under any other contract, collective bargaining agreement, law, rule or regulation or under the common law." N.Y. Lab. Law § 740(7) (McKinney 2006).

When interpreting the waiver provision, New York courts "have adopted differing and sometimes contradictory limiting constructions of this waiver." *Reddington v. Staten Island Univ. Hosp.*, 511 F.3d 126, 134 (2d Cir. 2007). These limiting structures fall into two camps. For one, New York state courts look at whether the other causes of action asserted arise out of the same "underlying claim." *See Garner v. China Natural Gas, Inc.*, 71 A.D.3d 825, 826–27 (2010) (stating that the plaintiff waived all causes of action "relating to" the alleged retaliatory discharge); *Deshpande v. TJH Med. Servs., P.C.*, 52 A.D.3d 648, 651 (2008) ("[P]laintiff waived

---

[3] The Court limits the scope of the waiver analysis to the CBA claim and not the ADEA claim because the waiver does not apply to federal claims. *See Collette v. St. Luke's Roosevelt Hosp.*, 132 F. Supp. 2d 256, 273 (S.D.N.Y. 2001). Further, the Court dismisses the NYSHRL claim on the same grounds as the ADEA claim.

14

recovery under the second cause of action to the extent it arose from the alleged retaliatory discharge"). However, New York federal courts narrowly apply the waiver only to "rights and remedies concerning whistleblowing." *See Humphrey v. Rav Investigative & Sec. Servs. Ltd.*, 169 F. Supp. 3d 489, 501 (S.D.N.Y. 2016) (finding that the employee's whistleblower claim did not waive an FLSA retaliation claim); *Collette v. St. Luke's Roosevelt Hosp.*, 132 F. Supp. 2d 256, 262 (S.D.N.Y. 2001) (holding that a retaliation claim for reporting illegal donations did not preclude an employment discrimination claim). In accordance with the case law in this District, the Court follows the second construction.

Under the second construction, Semeraro's CBA claim is not waived. In the controlling case in this District, which the Court finds persuasive, Judge Lynch explained—under factually similar circumstances—that a whistleblower claim would not preclude a claim arising from violation of an employment contract. *See Collette*, 132 F. Supp. 2d at 273 ("[The waiver provision] would allow a fired employee to file suit under the Act without waiving a claim under an employment contract prohibiting dismissal without cause . . ."). In reaching that conclusion, Judge Lynch concluded that whistleblower and employment contract claims represent "legitimately independent claims" even when arising from the same course of conduct. *Id.* at 274. Following *Collette*, Semeraro's whistleblower and CBA claims represent legitimate independent claims. As Semeraro's CBA claim survives the construction of the waiver provision applied in this District, his CBA claim is therefore not waived.

### 2. Semeraro Failed to Exhaust Mandated Grievance Procedures.

Finally, Defendants argue that Semeraro's CBA claim must be dismissed because he failed to exhaust the contractual grievance procedure embodied in the CBA. Defs.' Mem. Supp. at 11. Before an employee may bring suit against his employer for breach of collective

bargaining agreement, an employee is first required to exhaust any grievance or arbitration remedy provided in the collective bargaining agreement. *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 163 (1983). However, as a matter of exception, the employee may nonetheless bring suit if "the union representing the employee in the grievance/arbitration procedure acts in such a discriminatory, dishonest, arbitrary, or perfunctory fashion as to breach its duty of fair representation." *See id.* Failure to exhaust these grievance procedures or plead an exception thereby constitutes a failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

The Court finds Semeraro's CBA claim must be dismissed. First, Semeraro failed to plead exhaustion of the grievance procedures within the Amended Verified Complaint and even later concedes that he would not submit to the mandated grievance procedure. Pl.'s Mem. Opp'n at 17–18. Second, Semeraro does not plead an exception within the four corners of the complaint. In the past, this Court has allowed an employee to bring suit—notwithstanding finality of grievance—when the union breaches its duty of fair representation. *See Bright-Asante v. Saks & Co., Inc.*, 242 F. Supp. 3d 229, 240 (S.D.N.Y. 2017) (allowing a claim under a collective bargaining agreement to proceed when the plaintiff alleged that that the union was "not genuinely interested in fighting for [him]"). Here, Semeraro pleads no such breach of fair representation within the Amended Verified Complaint, but later asserts in his affidavits that union representatives breached their duty of representation by failing to "provide [P]laintiff with proffered causes of his termination." Pl.'s Mem. Opp'n at 17. Once again, Semeraro's attempt to cure his Amended Verified Complaint is improper because the Court must confine itself to the

four corners of the complaint and look only to allegations contained therein. *See Roth*, 489 F.3d at 509.

Thus, the Court finds that Semeraro failed to exhaust the mandated grievance procedures and further fails to allege an exception to the grievance requirement. As a result, Semeraro's CBA claim must be dismissed.

### E. Leave to Amend

The Second Circuit has instructed Courts not to dismiss a complaint "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Shabazz v. Bezio*, 511 F. App'x 28, 31 (2d Cir. 2013) (quoting *Shomo v. City of New York*, 579 F.3d 176, 183 (2d Cir. 2009)) (internal quotation marks omitted). Here, while Semeraro has already had the opportunity to amend his original Complaint, in *Loreley Financing (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160 (2d Cir. 2015), the Second Circuit reaffirmed that the "liberal spirit" of the Federal Rule of Civil Procedure 15 embodies a "strong preference for resolving disputes on the merits." *See id.* at 190–91 (quoting *Williams v. Citigroup Inc.*, 659 F.3d 208, 212–13 (2d Cir. 2011)). *Loreley* thus counsels strongly against the dismissal of claims with prejudice prior to "the benefit of a ruling" that highlights "the precise defects" of those claims. *Id.* at 190–91. Although Semeraro has had the opportunity to amend his original Complaint, he has never received the benefit of a ruling as his original Complaint was never dismissed.

As this is the Court's first opportunity to highlight the precise defects of Semeraro's pleading and it is not yet apparent that another opportunity to amend would be futile, Semeraro will be permitted to replead the NYSHRL, whistleblower, and CBA claims. However, Semeraro is administratively barred from repleading the ADEA claim.

## V. CONCLUSION

For the reasons set above, Defendants' motion to dismiss is GRANTED. Semeraro is granted leave to file a Second Amended Complaint, and, if he chooses to do so, he must file it by July 27, 2018. The Clerk of the Court is respectfully directed to terminate the motion, Doc. 21.

It is SO ORDERED.

Dated: June 29, 2018
       New York, New York

                                          Edgardo Ramos, U.S.D.J.